
## AARON GOFF and others, vs. JOHN THOMPSON and others.

Where a father executed a deed to his daughter, and the daughter and her husband agreed to support and maintain the grantor during his natural life, and several months afterwards, the grantor having died, and the daughter and her husband having performed their agreement upon a bill filed to set aside the deed, to give effect to a will previously made by the grantor, it was *held* that the consideration upon which the deed was given, was a good and valid consideration, and that the deed would not be set aside, though the *daughter* had executed a deed re-conveying the land to her father, as security for his support, the deed from the daughter to the father, having been cancelled or lost by the father.

A deed executed by a *feme covert*, without her husband joining with her, is void.

The bill in this case, was filed, January 12, 1836, by Aaron Goff and Elsey, his wife, Elial Todd and Polly, his wife, and Mica Mudge, and Martha, his wife, against John Thompson, and Diana, his wife, and Carson McCurdy, and stated that Richard McCurdy, (who was father of said Elsey, Polly, Martha, Diana and Carson,) was, in his life time, seized and possessed in fee, of the south-west quarter of section twenty, in township two south, of range ten east, in the county of Wayne, and May 30, 1833, made his will, whereby he bequeathed to his son Carson, the west half of said quarter section, and to the said Elsey, Polly, Martha and Diana, the remaining half of said quarter section; that some time after making the said will, an arrangement was made between said Richard and his son Carson, that said Richard should convey to him immediately the provision intended for him by the will; that September 9, 1834, Richard accordingly deeded the portion given by the will to Carson; the consideration stated in the deed was $2,000. The deed was recorded September 10, 1834. The bill stated that no part of the consideration money mentioned in the deed, was ever in fact paid, but that the deed was. a mere voluntary conveyance, intended to operate as in full of the bequest, and in full of his share of the real estate of said Richard; that said Richard omitted to make any alteration in his will, or take any release in behalf of his other children,

from said Carson to his share of the property under the will; that said Richard, during his life time, resided with his daugh- ter, Diana, and John Thompson, her husband, and some time after the execution of said deed, said Richard had some difficulty with his son Carson, in the course of which he struck or beat said Carson; that a short time afterwards said Carson threatened to commence, and did actually commence legal proceedings against said Richard; that he became alarmed, and his fears were excited, and his apprehensions increased by the representations of said Diana and John Thompson, with whom he was then residing; that said Richard was much infirm, and advanced in years; that said Diana and John, persuaded said Richard that his quarrel with his son Carson, would be his ruin; that Carson would strip him of all his property, and the only way for him to protect himself and save his property, would be for him to vest it in the name of some other person, and that by these and other persuasions continually kept up, they so worked upon the fears of the old man as to induce him to make a conveyance of all the remainder of his land to his daughter Diana Thompson, on or about the 27th day of September, 1834, for the pretended consideration of six hundred dollars; the bill charged that there was no consideration actually paid, and that the deed was procured by artifice and fraud; and that at the time of the execution of the deed, it was the express understanding between said Diana and her husband, and said Richard; that so soon as said Richard's difficulties with said Carson should be arrranged, the deed should be cancelled, and the land re-conveyed; that the deed from said Richard to said Diana, was not delivered, and that said Richard did not intend to deliver the same or have it recorded, unless he was driven to extremities by his son Carson's course of proceeding; that he put the deed in his trunk for safe keeping; that it was subsequently abstracted from his trunk, and put on record in the office of the register of deeds in the county of Wayne, October 1, 1834.

The bill further stated, that the said Richard was not only old, and removed from access on the part of his other chil-

dren, but also ignorant, and unable to write or sign his name; and that when the deed was brought to a justice to be acknowledged, it bore his mark, previously placed there by the said Dianna and John, or one of them, and a memorandum was made on the deed to that effect.

The bill charged that the deed was never read over to said Richard, or its contents explained, before he signed the same; and that his mark was placed on the deed before the witnesses were called, and not in their presence, and that said Richard never acknowledged the same in the presence of the subscribing witness; that in the month of December following, when a final settlement and adjustment of all difficulties between said Richard and Carson was about to take place, said Richard learned, for the *first time*, that the deed had been recorded, and that said Richard, in fact, did not know whether the paper executed was a deed or bill of sale; that said Richard became very uneasy on the subject, and threatened to leave the house of said Diana and John Thompson, and have recourse to legal proceedings to set aside the said deed, alledging the same to have been fraudulently obtained; that said Diana finally consented to re-convey the said lands to said Richard; that about the middle of December, 1834, she did actually execute and acknowledge, in due form of law, a deed of conveyance, re-conveying said land to said Richard; that her said husband did not join with her in said deed; and said Richard being an old and ignorant man, did not know it was necessary for her said husband to join with her in said conveyance, as he, the said Richard, had conveyed to said Diana alone, and accepted her conveyance; that early in the month of September following, said Richard died at the house of said Diana and John Thompson.

The bill also charged that the last mentioned deed had been abstracted from the trunk of said Richard, and at his death was not to be found. It also stated that the will of said Richard was duly proved, and probate thereof granted to Elial Todd, November 16, 1835.

The bill also stated, that when said Richard went to live

with defendants, Diana and John, he had about four hundred dollars in money and property, which they had used, or still retained at the death of said Richard:

The bill prayed that the deed executed September 27, 1834, might be decreed to be void, and be delivered up to be cancelled, and that an account might be taken, &c., and for an injunction.

An injunction was granted, January 14, 1836.

The answer of John Thompson and Diana, his wife, admitted that said Richard was seized of the lands in fee simple, and that a paper was executed by said Richard, purporting to be a last will and testament; denied any knowledge of its provisions; admitted also the making of the deed to Carson McCurdy as stated in the bill; admitted that said Richard lived with said defendants, John and Diana, during part of the year of 1834, and from that time up to the time of his death; that there were difficulties between said Richard and Carson, as stated in the bill; denied that said Richard became greatly alarmed at the proceedings against him by said Carson; also, denied that they excited or attempted to excite his fears, as stated in the bill, or that they advised him to convey any of his estate to any person.

The answer stated that some time before the prosecution was commenced by said Carson, said Richard came to the house of said John and Diana, and told them that he was so illy treated by his other children, and particularly, said Carson, that he could not and would not stay any longer with them, and that if his daughter Diana would not take his property and support him, he would give it to some one who would take it and support him; that said Richard repeatedly solicited said John and Diana to take his property and support him during his life; that at the urgent solicitations of said Richard, said defendants left a good situation and profitable business in the city of Detroit, and moved on to the land of said Richard, which was then nearly wild and uncultivated, and of but little value.

That at the urgent request of said Richard, they took him into their family to live permanently with them for the remain-

First Circuit.

Goff
vs.
Thompson.

der of his life; and without any solicitation or suggestion on the part of the defendants, he voluntarily proposed to convey to his said daughter, Diana, the tract of land described in the bill, on the condition and for the actual consideration that the defendants, John and Diana, would pay certain small debts which he then owed, and they should take him into their family and provide for him the necessaries and comforts of life during his life time; that about September 27, 1834, at the request and solicitation of said Richard, said John prepared a deed of the said land to said Diana, and the same was subsequently executed, signed, sealed, acknowledged and delivered in presence of the subscribing witnesses; that said deed, before it was executed, was read over and explained to said Richard; that there was never any other understanding or agreement, express or implied, than that the defendants were to have the land in consideration that they should provide for, maintain and support said Richard during his natural life, which promises and agreements, the answer alledged, the defendants had faithfully performed, fulfilled and kept.

That the deed was recorded with the full knowledge and consent of said Richard, and was never put away by said Richard, in his trunk, as alledged in the bill; but that the same remained in the hands and under the control of the defendants from the time of its delivery up to the time of the filing the bill, and that the agreement to support said Richard during his life, and the conveyance, were bona fide transactions.

The answer denied that said Richard was removed from access to his children, or any other persons; admitted that he was old and infirm of body, but stated that he had a sound mind, fully capable of appreciating the conduct towards him of his children and others. Admitted he was an illiterate man, unable to write, and stated that his mark was affixed to said deed by the justice who took the acknowledgment, or by some other disinterested person in the presence, and by the direction or request of said Richard.

Denied that said Richard ever expressed uneasiness on account of said deed having been made to said Diana, and threat-

ened to leave the house and have recourse to legal proceeding to set aside said deed.

Stated that Elial Todd, one of the complainants, about September 3, 1834, set up a false and unfounded claim, and commenced a suit at law against John Thompson, one of the defendants, and boasted that he would soon obtain a judgment for a large amount, and that he would sell the land which said Richard had conveyed to Diana, on the execution, and from other false and fraudulent representations, said Todd induced said Richard to fear that the provision he had made for his support in his old age, would all be taken away by said Todd, and he so expressed his fears to the defendants, and intimated a wish that said Diana would make out a deed to him of said land, merely and for the sole purpose of preventing its being taken and sold upon execution, if Todd should recover a judgment, and to keep sure his own support; and that said Richard stated, at the same time, it should make no difference; that said Diana should have the land; that he only wanted the deed to keep his son-in-law, Todd, from turning him out of doors, and to keep his other children easy.

That, with the aforesaid understanding, said Diana did execute, acknowledge and deliver to said Richard, a deed of said land; but said John refused to execute the said deed, and was not present when the same was executed by said Diana.

That it was the express understanding at the time of executing said deed, that it should never operate against said defendants; that it was then delivered to said Richard, and defendants had never seen it since that time, and did not know where it was or what had become of it; that defendants had good reason to believe said Richard, in his life time, destroyed it, on ascertaining Todd had no well founded claim against said John Thompson; that said Richard was taken sick about the last of August, and continued until about the first of November, when he died at the house of defendants.

Denies that said Richard brought personal property and money to the house of defendants, which they had used up, to the amount of $400, but admits that he brought cows, pigs, &c.,

First Circuit. to the amount of about $100, which he gave to his daughter, Diana.

Goff
*vs.*
Thompson.

That since defendants had been on said land, they had made considerable improvement; that defendants had been put to considerable trouble and expense in attending said Richard in his last sickness; paying doctor's bills and defraying the expenses of his funeral, and for clothing when he was in health, and that defendants had paid several of his small debts, but to what exact amount they did not know. Denies all combination, &c., and intent to deceive or defraud.

The case was submitted on bill and answer.

A. D. FRAZER, solicitor for complainants.

B. F. H. WITHERELL, solicitor for defendants.

THE CHANCELLOR.—The consideration for the deed from Richard McCurdy to Diana Thompson was a good and sufficient consideration; and the condition having been performed, there can be no doubt that the title of the defendants, John Thompson and wife, to the land in question, is good.

The conduct of the defendants, John and Diana Thompson, seems to have been not only just, but meritorious.

The deed from Diana Thompson to Richard McCurdy, is stated in the answer to have been executed as security merely, and having been destroyed or cancelled by the grantee, in pursuance of the agreement of the parties, cannot form the foundation of any claim of the present complainants. That deed was also void in itself, it having been executed by a *feme covert* without her husband's joining with her. (*See Sexton* vs. *Pickering,* 3 *Rand. R.,* 468.)

No relief is prayed against Carson McCurdy, the other defendant.

The bill must be dismissed with costs.

Bill dismissed.